IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SUSAN CHANCO, | ) | CIVIL NO. 06-00547 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NORTH HAWAII COMMUNITY | ) | |
| HOSPITAL, INC., a Hawaii | ) | |
| nonprofit corporation, SARAH | ) | |
| RIZNYK, LAURA BOEHM, | ) | |
| DELSA BERTELMANN, | ) | |
| MARYANN JORDAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On February 19, 2008, the Court heard Defendants' Motion for

Summary Judgment.  (Doc. # 65.)  Dean Choy, Esq., appeared at the hearing on

behalf of Plaintiff; Richard M. Rand, Esq., and Jennifer K. Murata, Esq., appeared

at the hearing on behalf of Defendants.  After reviewing the motion and the

supporting and opposing memoranda, the Court GRANTS IN PART AND

DENIES IN PART Defendants' Motion.  The motion is granted with respect to

Plaintiff's claim for intentional infliction of emotional distress and denied with

respect to Plaintiff's claim under the Family and Medical Leave Act ("FMLA").

<u>BACKGROUND</u>

Plaintiff was hired in August 2003, and worked as a registered nurse for Defendant North Hawaii Community Hospital.  Her job duties included caring for patients, administering medication, and maintaining patient charts.  Plaintiff reported to Defendant Sarah Riznyk, ICU Clinical Leader.

In August 2004, Plaintiff requested and was granted leave pursuant to the FMLA to care for her son who was experiencing kidney failure.  Plaintiff returned to work without incident.  On October 10, 2004, Plaintiff administered 10 mg of morphine to a patient, however, the proper dosage was 4 mg.  Plaintiff reported her mistake that same day.  Plaintiff explained that she accidently pulled out a 10 mg morphine syringe from the drawer because the boxes of syringes in the drawer were next to each other.  The error was considered a Category D error because the error reached the patient, caused a need for increased monitoring, but caused no harm to the patient.  Plaintiff received her annual job performance evaluation on October 15, 2004, from her supervisors Riznyk and Defendant Laura Boehm.  The narcotic administration error was not discussed during the performance evaluation.  During this meeting, Plaintiff stated that she supported having a union for nurses at the hospital.

On January 25, 2005, Riznyk counseled Plaintiff on the following issues: 1) the October 10, 2004 narcotic administration error; 2) her failure to properly replace intravenous ("IV") lines; 3) keeping patients' rooms tidy and properly disposing of syringes; and 4) her attendance.  The counseling was documented as a Conference, which was the lowest form of discipline.  Riznyk told Plaintiff to seek assistance and guidance from others when needed.

On February 1, 2005, a nurse supervisor submitted a letter to Riznyk, stating that she was concerned about Plaintiff's patient care because two of her patients were left without proper IV access.  This letter was never discussed with Plaintiff.  On February 3, 2005, Plaintiff committed a narcotic administration error. Plaintiff gave a patient 10 mg of morphine, rather than 5 mg of morphine.  Plaintiff reported the error on February 7, 2005.  The error was considered a Category C error because the error reached the patient, but caused no harm.

On March 7, 2005, a quadriplegic patient reported that Plaintiff had administered a hot compress to him and he received first degree burns from the compress.  That same patient also complained that Plaintiff used an improper method for administering nasal spray by tipping his head back, rather than sitting him upright.  Due to the method she used, he received more medication than he should have, and it ran down the back of his throat.  The patient stated that he did

3

not want to cause problems for the nursing staff because he felt that he had received excellent care.

On March 14, 2005, Riznyk went out on maternity leave. During that time, Jennifer Rabalais was the Acting ICU Leader. On March 15, 2005, Plaintiff removed restraints from a patient, who subsequently fell. Plaintiff found the patient on the floor, but did not document the incident in the patient's chart or in an incident report. Rabalais met with Plaintiff on March 18, 2005, to discuss the fall and her failure to document the incident. Rabalais issued Plaintiff a Verbal Reminder, the second level of disciplinary action. It appears from the documentation, however, that the Verbal Reminder form was not completed until May 27, 2005, while Plaintiff was out on leave. Plaintiff stated that her supervisor had ordered her to remove the restraints because the physician orders were incomplete. Plaintiff complied with the directive and did not want to be insubordinate. Rabalais told Plaintiff that she should have called the physician to clarify whether the restraints should be removed and that she would not have been faulted for attempting to clarify a situation that could endanger the patient. Rabalais told Plaintiff to document the fall, which she did. Plaintiff claims that she asked her supervisor at the time to call the physician but he did not do so because it was 12:15 a.m. At the hearing, Defendants' counsel explained that the physician

4

had ordered the restraints, but that it had not been placed in the chart and that Plaintiff should have understood that her supervisor was telling her to chart it, not to remove the restraints.

In April 2005, Plaintiff requested leave from April 20, 2005, through July 21, 2005, in order to care for her son, who was possibly in renal failure. Plaintiff began leave, pursuant to the Family Medical Leave Act ("FMLA"), on April 20, 2005.  Riznyk returned to work from maternity leave on or about May 25, 2005.  Riznyk was informed of the incidents discussed above.  Riznyk and Boehm conducted an investigation into the incidents of the February 3rd narcotics administration error, the first-degree burn suffered by the quadriplegic patient, and the nasal spray administration to the same patient.  After consulting with Defendant Human Resources Director Delsa Bertelmann, Riznyk and Boehm determined that Plaintiff should receive a Final Written Warning for her February 3rd narcotic administration error, and that she should be terminated based upon the first-degree burns and nasal spray administration to the quadriplegic patient. Riznyk prepared the documentation forms for these disciplinary actions on May 27, 2005.  Because Plaintiff was currently out on FMLA leave, Defendants waited until her return in July to issue the disciplinary action and termination.

Defendants met with Plaintiff on July 21, 2005, the day she returned from FMLA leave.  Riznyk discussed the Final Written Warning and termination decisions.  Riznyk explained that these issues were not discussed sooner because Riznyk had been on maternity leave.  The parties dispute whether Plaintiff was told that the termination decision could be reversed based upon Plaintiff's explanation.  Plaintiff claims that Riznyk and Boehm's investigation was incomplete because they did not speak to Patricia Althouse, a respiratory therapist, who put the first hot-compress on the quadriplegic patient and who showed her how it should be done.  Plaintiff also claims that Riznyk and Boehm apparently did not consider the fact that her supervisor ordered her to remove the restraints from the patient and that she had requested that the physician be called but he declined to do so.  Plaintiff went to see Human Resources Director Bertelmann and Bertelmann allegedly stated to her that this should not have happened.

Plaintiff filed a Complaint on October 5, 2006, alleging that Defendants violated the FMLA by terminating her from employment, and she brought a claim for intentional infliction of emotional distress ("IIED").  Defendants filed the instant motion for summary judgment on December 14, 2007.  (Doc. # 65.)  Plaintiff filed her opposition on February 1, 2008, and Defendants filed a reply on February 8, 2008.

6

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

7

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

8

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.      FMLA Claim

Plaintiff claims that Defendants violated the FMLA by considering her leave as a negative factor in deciding to terminate her employment, and terminating her from employment, rather than restoring her to her position upon her completion of FMLA leave.

The FMLA gives an employee the right to take up to twelve weeks of leave for certain medical or family reasons.  See 29 U.S.C. § 2612(a).  An employee who takes FMLA leave has the right to be restored to his or her original position or an equivalent position when he or she returns from leave.  See 29 U.S.C. § 2614(a).[1]  However, an "employee has no greater right to reinstatement   .

_____

[1]Although it is unclear whether Plaintiff is bringing a FMLA claim under both a retaliation and an interference theory, Defendants have moved only on

(continued...)

. . than if the employee had been continuously employed during the FMLA leave period.  An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."  29 C.F.R. § 825.216(a); <u>see also</u> <u>Xin Liu v. Amway Corp.</u>, 347 F.3d 1125, 1132 (9th Cir. 2003) ("The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. 29 U.S.C. § 2614(a)(3)(B). It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions.").

         "To protect the employee, FMLA prohibits interference with the exercise of the employee's right to take leave."  <u>Xin Liu</u>, 347 F.3d at 1132.  29 U.S.C. § 2615 provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [and subchapter]."  29 U.S.C. § 2615(a)(1).  In order to prove a claim of interference with the exercise of FMLA rights, a plaintiff need only establish through direct and/or circumstantial evidence that his or her taking of

---

[1](...continued)
Plaintiff's theory that they interfered with her FMLA rights.  (Mot. at 22) ("there is no issue of fact that Defendants interfered with either of Plaintiff's substantive rights under the FMLA.").  Accordingly, this Court will only address Plaintiff's FMLA claim based on a theory of interference.

FMLA-protected leave constituted a negative factor in the termination decision.
See Xin Liu, 347 F.3d at 1135-36 ("at trial, an employee may prevail on a claim
that an employer interfered with her rights by terminating her in violation of
FMLA by showing, by a preponderance of the evidence that her taking of
FMLA-protected leave constituted a negative factor in the decision to terminate
her.  She can prove this claim, as one might any ordinary statutory claim, by using
either direct or circumstantial evidence, or both."); 29 C.F.R. § 825.220(c)
("employers cannot use the taking of FMLA leave as a negative factor in
employment actions.").  "[W]here an employee is subjected to 'negative
consequences . . . simply because he has used FMLA leave,' the employer has
interfered with the employee's FMLA rights under 29 C.F.R. § 825.220(a)(1)."
Xin Liu, 347 F.3d at 1136 (quoting Bachelder v. Am. W. Airlines, Inc., 259 F.3d
1112, 1124 (9th Cir. 2001)).

Defendants claim that Plaintiff was terminated for her poor
performance relating to patient safety and she would have been terminated
regardless of whether she had taken FMLA leave.  Plaintiff asserts that there is an
issue of fact as to whether her FMLA leave was a negative factor in the termination
decision because all of the events which formed the basis for her termination
occurred prior to her request for and start of FMLA leave, Defendants'

11

investigation into the incidents was "shoddy," the decision to terminate was made without discussing the incidents with Plaintiff, and Defendants made the decision to terminate Plaintiff while she was on FMLA leave.  Plaintiff claims that because Defendants waited several weeks before disciplining her for the incidents, the incidents were clearly not viewed as serious enough to warrant even a verbal counseling at the time they occurred.

Defendants cite to various cases as support for their proposition that summary judgment is appropriate in this circumstance.  In Ogborn v. United Food and Commercial Workers Union, Local No. 881, prior to going out on FMLA-protected leave, the employee had been suspended several times based on his poor performance, and warned that one more instance would result in termination.  305 F.3d 763, 766 (7th Cir. 2002).  While the plaintiff employee was on medical leave, the union employer discovered additional evidence of his poor performance, which had occurred prior to having taken leave.  The employer terminated the employee while the employee was on leave.  Id.  The court found that summary judgment in favor of the employer was proper because the plaintiff "would have been fired even if he had not taken leave because the union discovered additional evidence of his poor work after warning him that further performance problems would lead to

12

his termination."  Id. at 768.  Therefore, the court found that the union did not

violate the FMLA.

Similarly, in Niemiec v. H & K Inc., prior to taking leave, the

employee had been warned that if she did not improve in her speed and accuracy of

inputting invoice information into the computer and did not reduce her backlog, the

company would have to make a change.  94-C-553, 1995 WL 465683, at *1 (E.D.

Wis. April 26, 1995).  While the employee was out on leave, the employer

discovered that the employee's desk contained a large backlog of invoices.  Id.

The company "presented unrebutted testimony that they had wanted to fire [the

employee] earlier in the year, but had not because she was pregnant.  The backlog

of invoices that they discovered was the 'last straw' precipitating the

termination[.]"  Id. at *2.  The employer terminated her one month later, while she

was still out on leave.  The court granted summary judgment in favor of the

employer on the FMLA claim, finding that the plaintiff failed to create a genuine

issue of fact that the employer would not have fired her for backlogs and

inaccuracy had she not taken her leave.  Id. at *3.[2]

---

[2]  The Schlifke v. Trans World Entertainment Corp., 479 F. Supp. 2d 445,
451-52 (D. Del. 2007) and Metzler v. Fed. Home Loan Bank of Topeka,
464 F.3d 1164 (10th Cir. 2006) cases cited by Defendants are not persuasive
because they do not discuss a FMLA claim based upon a theory of interference.

(continued...)

This Court does not find the Ogborn and Niemiec cases persuasive

because they are factually different.  In those cases, prior to taking leave, the

employee had been warned that one more instance of poor performance would

result in termination.  Here, prior to taking her leave, Plaintiff had not been warned

that she was on her "last-straw."  Instead, Plaintiff had received only the lowest

form of discipline, a Conference, which was based upon four different issues.[3]

Furthermore, in those cases, the employer discovered additional evidence of the

employee's poor performance while the employee was on leave.  Here, however,

unlike the Ogborn and Niemiec cases, Defendants did not discover additional

evidence of Plaintiff's misconduct while she was on FMLA leave.  Instead,

Defendants were aware of each incident prior to Plaintiff's request to take FMLA

leave.  Defendants have not explained why they could not have gone forward with

_____

[2](...continued)
Neither case considers the Ninth Circuit's negative factor standard used for an
interference claim.  They discuss only a FMLA retaliation claim, which like a
discrimination claim, is analyzed under the burden shifting framework of
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The McDonnell
Douglas framework, however, does not apply to an interference claim.  Xin Liu,
347 F.3d at 1136.

[3] Plaintiff had also received a verbal counseling for the incident regarding
unstrapping a patient.  However, it appears that this verbal counseling was nothing
more than a conversation at the time of the counseling, and was only later
documented into an official Verbal Reminder, while Plaintiff was on leave.  Thus,
it is not evidence that Plaintiff had been warned that she may be terminated.

all the disciplinary actions at or near the time of the incidents, or at least, prior to Plaintiff's request for leave.  Rabalais apparently had authority to issue the Verbal Reminder and was the acting supervisor.  Defendants have not explained why she could not have taken disciplinary action against Plaintiff for the other incidents, or why it was necessary to wait for Riznyk's return to impose discipline.  Moreover, the narcotic error and burns to the quadriplegic patient occurred prior to Riznyk taking maternity leave.  Thus, if her presence was necessary to issue the discipline, she could have issued it prior to taking her leave.

In addition, neither the Ogborn case nor the Niemiec case discuss the Ninth Circuit's standard that in order to prove a claim of interference with the exercise of FMLA rights, a plaintiff need only establish through direct and/or circumstantial evidence that his or her taking of FMLA-protected leave constituted a negative factor in the termination decision.  Instead, those cases focus solely on the standard that the employee would have been terminated regardless of the leave.

Therefore, there is a genuine issue of fact as to whether taking FMLA leave was a negative factor in the termination decision.  Although Defendants may have had legitimate reasons for terminating Plaintiff, and Plaintiff's evidence that she was terminated for taking FMLA leave is weak, drawing all inferences in favor of Plaintiff, the facts that Defendants were aware of the incidents prior to imposing

the discipline, did not impose discipline at or near the time of the incidents, did not

begin an investigation leading to termination into the incidents at or near the time

of the incidents,[4] and imposed the discipline only after Plaintiff requested and went

out on FMLA leave, are sufficient to show by a preponderance of the evidence that

there is a genuine issue of fact of whether taking FMLA leave was a negative

factor in the termination decision.  Xin Liu, 347 F.3d at 1137 ("proximity in time

between the leave and her termination also provides supporting evidence of a

connection between the two events").  In other words, this Court cannot determine

as a matter of law, given the circumstances of this case, that taking FMLA leave

played no negative role in the decision to terminate.  This is a question for the jury

to decide.

    Defendants next argue that they were entitled to terminate Plaintiff

because her twelve weeks of leave expired on July 13, 2005, but she did not return

to work until July 21, 2005.  Defendants' argument fails because Plaintiff

requested that she be allowed to remain out until July 21, 2005, and Defendants

granted this request.  Defendants are now arguing that Plaintiff should have

ignored their grant of her request, calculated the number of weeks herself, and

---

    [4]This Court is not stating that employers are required to immediately impose
discipline, or that the fact that an employer waits to impose discipline renders the
discipline invalid.

16

returned to work one week earlier on her own accord.  Certainly, Plaintiff was under no such duty.  Indeed, "it is the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the Act."  <u>Bachelder</u>, 259 F.3d at 1130.  Having granted her request, Defendants cannot argue that it was unreasonable for Plaintiff to stay out one extra week. Defendants have presented no evidence that they informed Plaintiff that she had to return to work one week earlier.  Had Defendants so informed Plaintiff, it is possible that she may have returned after only 12 weeks of leave.  For these reasons, Defendants were not entitled to terminate her employment for failing to return at the close of the 12-week period.

Therefore, Defendants' motion with respect to Plaintiff's FMLA claim is DENIED.

## II.   <u>IIED Claim</u>

Plaintiff's IIED claim is based on her belief that Defendants became highly motivated to discipline her after she stated that she supported having a nurses' union.  She claims that this unlawful intent, in conjunction with an inadequate investigation into the conduct that supported the termination, and her allegation of disparate treatment creates a triable issue of fact as to whether Defendants' conduct was outrageous.

17

In order to establish an IIED claim, a plaintiff must show "'(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'" Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v. Univ. of Haw., 73 P.3d 46, 60-61 (Haw. 2003)).  The Hawaii Supreme Court defines the term "outrageous" as conduct "without just cause or excuse and beyond all bounds of decency." Enoka, 128 P.3d at 872.  An IIED claim cannot be sustained by "threats, annoyances, petty oppressions, or other trivialities." See Bragalone v. Kona Coast Resort Joint Venture, 866 F. Supp. 1285, 1294 (D. Haw. 1994).  "[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46 cmt. d; see Hac, 73 P.3d at 60 (in Hawaii, a plaintiff must establish that the defendant's alleged conduct was "outrageous," as defined by the Restatement (Second) of Torts).
Hawaii's definition of outrageous conduct creates a very high standard of conduct in the employment context.  See Ross v. Stouffer Hotel Co., 879 P.2d 1037, 1048 (Haw. 1994); Ingle v. Liberty House, Inc., Civil No. 94-0787(3), 1995 WL 757746, at *4 (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In Ross, the Hawaii Supreme Court recently has set an extremely high standard for such a claim in the

18

employment context[.]").  Under Hawai`i law, termination alone is not sufficient to support an IIED claim; rather, what is necessary is a showing of something outrageous about the manner or process by which the termination was accomplished.  As stated in Ingle, "[a]lthough intentional infliction claims frequently are asserted in connection with employee dismissals, recovery is rare. Imposition of liability on this tort theory is likely only in the unusual case when an employer deliberately taunts an employee, or when an employer handles an employee with outrageous insensitivity."  Ingle, 1995 WL 757746, at *4 (quotation omitted; emphasis added); Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 852 (9th Cir. 1990) ("[d]ischarge, without evidence of more, does not create a case for emotional distress.").  This remains true even where an employee alleges that his termination was the result of unlawful discrimination or retaliation.  See Ross, 879 P.2d at 1048 (termination based on alleged marital status discrimination was insufficient to sustain IIED claim); Bragalone, 866 F. Supp. at 1294 ("firing an employee for what are seen as unfair reasons" was insufficient to sustain IIED claim) (citations omitted); see also Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1068 (Haw. 2000) (employee's complaints of termination based on age discrimination and of a "vicious" verbal attack, being yelled at, criticized for poor job performance, being singled out and told to wear more makeup because the

19

employer was looking for a much younger look, and being chastised in front of other employees, was insufficient to create a genuine issue of fact of outrageousness).

Here, Plaintiff has not alleged nor do the facts support that anything was outrageous about the manner in which she was terminated.  Neither has Plaintiff alleged any other facts that could rise to the level of outrageousness. Moreover, to the extent her IIED claim is based upon her alleged union support, such claim is preempted under the National Labor Relations Act because it is ultimately based on and related to her termination. See Buscemi v. McDonnell Douglas Corp., 736 F.2d 1348, 1352 (9th Cir. 1984) (an IIED claim by a union employee based on wrongful discharge and that the employee suffered emotional distress from the "callous and insensitive manner of his termination" is preempted under the NLRA).  Accordingly, summary judgment is GRANTED on Plaintiff's IIED claim in favor of Defendants.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment.  Defendants' motion is GRANTED with respect to Plaintiff's IIED claim and DENIED with respect to Plaintiff's FMLA claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 25, 2008.

_____
David Alan Ezra
United States District Judge

<u>Susan Chanco vs. North Hawaii Community Hospital, Inc., et al.</u>, CV No. 06-00547 DAE-LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT